# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

THOMAS WOODS,                          *

Petitioner,                            *

v.                                     *          Civil Action No. JKB-22-3135

WARDEN OF MCTC,                        *

Respondent.                            *
                                     ***

## MEMORANDUM OPINION

Self-represented petitioner Thomas Woods filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he collaterally attacks his 2019 conviction for first-degree assault. (ECF No. 1.) Respondent contends that the claims in the petition are procedurally defaulted, non-cognizable, or lack merit. (ECF No. 5.) The petition is ready for resolution and no hearing is necessary. *See* Loc. R. 105.6; *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the petition and declines to issue a certificate of appealability.

## I.    BACKGROUND

Woods was charged with first-degree assault, second-degree assault, reckless endangerment, false imprisonment, and theft on April 3, 2019, in the Circuit Court for Washington County, Maryland. (ECF No. 5-1 at 5, 14.) On July 30, 2019, two days before Woods' scheduled jury trial on August 1, 2019, the trial court held a hearing. (ECF No. 5-2.) Woods' counsel, Stephen Musselman, advised the court that the state offered a plea agreement with terms of a recommendation of eighteen months' imprisonment in exchange for a guilty plea to count one, first-degree assault. (*Id.* at 3.) Woods indicated he wanted to plead guilty and the trial court

proceeded with the colloquy. (*Id.* at 3–7.) During the colloquy, Woods advised the trial court that

he was hesitant about giving up his right to a jury trial. (*Id.* at 7.) The trial court explained that

the state was recommending a sentence of eighteen months, but the maximum possible sentence

was twenty-five years and it was up to the judge to impose the sentence. (*Id.* at 7.) Woods decided

to proceed with the jury trial. (*Id.* at 8.) The prosecutor stated on the record that the eighteen-

month recommendation from the state was no longer available. (*Id.*) Woods' counsel advised the

trial court that Woods understood, and Woods responded "yes." (*Id.*)

Before the trial was set to begin on August 1, 2019, Woods' counsel advised the trial court

he wanted to plead guilty to first-degree assault. (ECF No. 5-3 at 4.) Woods' counsel also advised

the court that Woods understood that the eighteen-month recommendation from the state was no

longer "on the table." (*Id.*) The prosecutor advised the trial court that the state would seek a

sentence at the top of the guidelines range, ten to fifteen years (*id.*), and the only agreement was

that the state would not pursue the remaining charges. (*Id.* at 5.) The trial court asked Woods if

he wanted to plead guilty under the circumstances and Woods responded, "yes." (*Id.*)

The trial court proceeded with the plea colloquy during which Woods was again advised

of the terms of the plea agreement and was advised of the rights he was waiving by pleading guilty,

and the maximum possible sentence of twenty-five years. (*Id.* at 5–9.) Woods affirmed that he

was satisfied with his counsel and his plea was voluntary. (*Id.* at 11–12.) The trial court found

that the plea was knowing, intelligent, and voluntary. (*Id.* at 12.) The prosecutor then recited the

factual basis for the plea:

> On February 14th, 2019, Ms. Chanteen Boarman, who is friends with the
> Defendant, Thomas Woods, was invited over to his residence at 500 North
> Mulberry Street, Apartment Number 2. He had invited her over to come have some
> drinks, that there would be friends there. She hesitated at first but then decided that
> she would go over there. She arrived over there sometime 6:30, 7 o'clock that

evening. There were other people there. Eventually through the evening, there was money on the table in the apartment. And, uh, all the other partygoers had left.

It was approximately 10:30, 11 o'clock at night. She was alone with Mr. Woods. Mr. Woods then accused her of stealing his $280 or approximately $280/$300. Ms. Boarman adamantly denied having the money. She - - she offered to and did dump her purse to show that she did not have his money. At that point, Mr. Woods punched her in the face. That began [sic] assault that lasted till approximately 10:30 the next morning.

Mr. Woods continually beat - - beat on Ms. Boarman. He beat on her with his hands. He even told her at one point he needed to take a break because - - because of his knuckles. They needed a break. She did plead with him. She said, "You're gonna kill me." He said, "Good." He was just con- continually pummeling her with his hands. He had her down on the ground strangling her with his knee on her neck. He did also use her arm as a chokehold to strangle her - - her neck. She believes that at one point, uh, she did not lose consciousness, but she felt that she was gonna die when her breath was knocked - - when he was strangling her, she began to foam up at the mouth.

She was not able to leave. Mr. Woods, once he accused her of taking the money, he said that, "You're gonna give me my money. And you're not gonna leave until you do so." Mr. Woods then blocked the entrance to the apartment with the couch. There was a rear entrance. He sat at the couch near the rear entrance. And Ms. Boarman even though she made attempts to try to leave, she was unable to leave the apartment. So, he did, he continually beat on her. She had over a hundred marks, injuries on her body to - - that substantiated the - - the brutal beating she was taking.

By the morning hours, Mr. Woods proceeded to beat on her with a cable, which was believed to be a HDMI cord. It looks like a bungee cord. The injuries on her person were indicative of being also hit with a bungee cord. The officers in this - - well, let me just back up. This brutal assault ended about 10:30 the next morning when Mr. Woods' nephew, Apollo, who Ms. Boarman knows, came into the apartment. He came up the back way into the apartment. And Ms. Boarman was pleading with him to help her to get out of there. Ms. Boarman stated that the nephew, Apollo, did talk to his uncle. He said, you know, "You need to stop doing this. She didn't take your money." And eventually, Mr. Woods then went and laid down and went to sleep. At which point, Ms. Boarman was able to follow Apollo and they left the residence.

Ms. Boarman drove home to her residence, another block of Mulberry Street here in Hagerstown, Washington County, Maryland. When she arrived home, her daughter, uh, her daughter came home from school, found her - - found her mother there in horrible condition covered in bruises and - - and just in a shattered emotional state. Ms. Boarman's father was also there. The police were called.

3

Hagerstown Police Department did respond to Ms. Boarman's residence along with Community Rescue Services. Community Rescue Services attended - - Ms. Pickett did attend to Ms. Boarman. She was transported to the hospital.

Once at the hospital, the police officers took pictures of Ms. Boarman's injuries. They were - - they're extensive. The horrific head-to-toe covered in bruises, mostly defensive bruises on her arms, which is consistent with her statement that she just cowered and was covering her face with her arms trying to block the blows from the Defendant. Ms. Boarman was examined by a SAFE nurse despite there was no allegations of sexual assault. Because of the extensive nature of the injuries, Ms. - - Mrs. McNew was called in. She did a forensic examination. She also was able to take - - take photographs and measurements of the injuries. Ms. Boarman's neck was swollen.

She was - - Ms. Boarman was asked to come back a few days later. She did. There was extensive bruising from the chin onto the - - her chest, black and blue - - a yellowish black and blue showing where Mr. Woods had strangled her. Also, there was another measurement taken of Ms. Boarman's neck. It was 1.75 inches smaller than when it was measured three days prior. Mrs. McNew is an expert in forensic nursing, and she would testify that this was one of the worst strangulation cases she had ever seen. All of these events occurred here in Washington County, Maryland.

(*Id.* at 12–16.) The state entered the photos into the record. (*Id.* at 19.)

The trial court found Woods guilty of first-degree assault and set sentencing for later that afternoon. (*Id.* at 16, 18.) The trial court sentenced Woods to twenty-five years, all but ten years suspended, with three years' supervised probation. (*Id.* at 36–37.) After the sentence was pronounced the following exchange occurred between Woods and the trial court:

Woods:      Yes, uh, the only reason why I did this was because I was a - - I thought that I was just gonna get probation under judgment is the reason - - this is - - well this is what I'm thinking that I waive my rights for. Okay? I mean I'm just saying now I'm saying if - - I - - that's the reason why I did was proceeded to go on. Maybe I was wrong. But that's what I'm thinking because, like I said, I'm not really keen on, uh, the courts and everything. I've never been that high like before and understanding a lot of things. It's the reason why I wanted to go through this, you know, I thought that the Judge was gonna be lenient. You know? Because that's what I thought it was just gonna be eighteen...

Court:      You've seen the pictures.

4

(*Id.* at 38–39.)

On August 13, 2019, Woods wrote a letter to the trial court, which was docketed as a petition for postconviction relief. (ECF No. 5-1 at 8, 19.) The letter said that Woods desired to "recant" his plea because it was "unintelligent[]," he was denied due process because his suppression hearing was held "in abstentia," and his trial counsel was ineffective. (*Id.* at 19.) Shortly thereafter, Woods' counsel filed an Application for Leave to Appeal with the Appellate Court of Maryland,[1] arguing that Woods "did not knowingly enter the plea nor did he understand the full consequences and full details of the plea." (*Id.* at 20.) The Appellate Court of Maryland summarily denied leave on December 6, 2019. (*Id.* at 22–23.) Woods did not seek further review.

In the meantime, Woods filed two amended petitions for postconviction relief. (*Id.* at 25–36.) He also filed an affidavit expressing his discontent with his postconviction counsel that restated his claims. (*Id.* at 39–43.) The postconviction court held a hearing on December 14, 2021, where no testimony was heard, and the claims were submitted for consideration on the briefs. (ECF No. 5-4.) On March 22, 2023, the postconviction court entered an Opinion and Order denying Woods' petition. (*Id.* at 46–60.) Woods sought leave to appeal with the Appellate Court of Maryland (*id.* at 61–65), which was denied on November 2, 2022. (*Id.* at 66–67.)

This Court received Woods' federal habeas petition on December 2, 2022. (ECF No. 1.) Woods describes his claims as: "petitioner advances the unanswered claims to this Honorable Court as well as the claims passed along by the Court of Special Appeals." (*Id.* at 2.) The Court interprets this to mean that Woods is advancing the claims addressed by the postconviction court in its March 22, 2023, order as well as the single claim it overlooked, that his due process rights were violated because his suppression hearing was held in his absence. For clarity, the Court

---

[1]    Formerly known as the Court of Special Appeals.

restates Woods' claims as four grounds for relief: (1) Woods' plea was not made willingly, freely, voluntarily, and intelligently; (2) Woods was denied his right to effective assistance of counsel because defense counsel failed to adequately inform him of the terms of the plea offer and Woods detrimentally relied on defense counsel's misrepresentation of the plea offer when entering a plea of guilty; (3) Woods' sentence cannot be upheld due to judicial misconduct; and (4) Woods was denied due process because his suppression hearing was held in his absence. Respondent argues that the claims are non-cognizable (ECF No. 5 at 32, 73–75), procedurally defaulted (*id.* at 33–37), or lack merit (*id.* at 39–72).

## II.  STANDARDS OF REVIEW

### A. AEDPA

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2)

6

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court

7

conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### B. Procedural Default

Procedural default occurs when a habeas petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code (2020 Repl. Vol., 2024 Supp.), §§ 12-201, 12-301 of the Courts and Judicial

8

Proceedings Article ("C.J."). To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted, due within ten years of the date of sentencing. *See* Md. Code (2018 Repl. Vol., 2024 Supp.), §§ 7-101–7-103 of the Criminal Procedure Article ("C.P."). After a decision on a postconviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland. *Id.* § 7-109. If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted. C.J. § 12-202.

As noted, procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit a second and successive state petition for postconviction relief. *See* C.P. § 7-103(a).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495–96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).

To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

9

infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

## III.  ANALYSIS

### A.  Ground One — Involuntary Plea

In Ground One, Woods contends that his plea is invalid because the trial court failed to comply with Maryland Rule 4-243, concerning plea agreements. He also contends that his plea violates *Santobello v. New York*, 404 U.S. 257 (1971), because the state broke its promise to recommend a sentence of eighteen months. (ECF No. 1 at 2.) The postconviction court denied Woods' claim, concluding that the plea did not violate Md. Rule 4-243, was knowing, intelligent, and voluntary, and was not contrary to *Santobello* because the state did not breach any promise to Woods. (ECF No. 5-1 at 52–59.)

Respondents argue that Ground One is a non-cognizable, state-law claim. (ECF No. 5 at 32.) To the extent that Woods contends he is entitled to habeas relief because the state failed to strictly comply with Md. Rule 4-243, it is non-cognizable. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. 2254(a). *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991).

10

However, the Court perceives Ground One more broadly than a pure state-law claim. Woods specifically invoked his federal constitutional rights when challenging the voluntariness of his plea in his postconviction pleadings and again in his federal habeas petition. (ECF No. 5-1 at 42; ECF No. 1 at 2.)

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749; *King*, 17 F.3d at 153 (and cases cited therein). "[T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting

11

the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

The record reflects that the trial court advised Woods on August 1, 2019, of the nature of the plea agreement and the maximum possible sentence. (ECF No. 5-3 at 4–6, 8–9.) The trial court confirmed that Woods understood the nature of the charges and advised him that by pleading guilty he was giving up his right to a jury trial, right to confront witness against him, right to require the state to prove his guilt beyond a reasonable doubt, and right to remain silent. (*Id.* at 4–7.) Woods advised the court that he was voluntarily waiving his rights and was admitting guilt. (*Id.* at 9, 12).

As noted above, "the voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea." *Brady*, 397 U.S. at 749. For this reason, the Court cannot say it was unreasonable for the postconviction court to conclude that Woods' responses during the plea colloquy demonstrated that the plea was voluntary. Habeas relief is not due unless the petitioner can show that no fairminded jurist would have reached the same conclusion as the Court of Appeals or that its conclusion is contrary to a United States Supreme Court opinion. *See Harrington*, 562 U.S. at 101; *Williams*, 529 U.S. at 365. That, Woods cannot do.

Woods argues that the state violated *Santobello* because it broke an agreement to recommend a sentence of eighteen months imprisonment. In *Santobello*, the United States Supreme Court held that due process requires that the promises of a prosecutor that induce a guilty plea must be kept. 404 U.S. 257. Here, no promise was broken and the postconviction court was not unreasonable for reaching the same conclusion. The record reflects that before Woods entered his guilty plea he was advised no fewer than four times that the state was no longer recommending an eighteen-month sentence. (ECF No. 5-2 at 8; ECF No. 5-3 at 4, 8–9.) Indeed, Woods' statement

12

to the trial court after sentencing demonstrates that he understood that the sentence was up to the judge, and there was no agreement for a sentence of eighteen months. (ECF No. 5-3 at 38–39.) His statement is further proof that his dissatisfaction was rooted in a belief that he would receive a lenient sentence and not due to involuntariness. "[A] plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal. *Bradshaw v. Stumpf*, 545 U.S. 175, 186 (2005).

*Boykin*'s "requirement [is] that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The record reflects that the trial court explicitly explained to Woods that a recommendation for an eighteen-month sentence was no longer available when he rejected the plea agreement on July 30, 2019, and again when he chose to plead guilty on August 1, 2019. The record also reflects that Woods made a voluntary and intelligent choice to plead guilty on August 1, 2019, anyway, fully understanding that the judge would decide the sentence which could be as much as twenty-five years' imprisonment.[2]

---

[2]    Md. Rule 4-243(b) reads: "The recommendation of the State's Attorney with respect to a particular sentence, disposition, or other judicial action made pursuant to subsection (a)(1)(E) of this Rule is not binding on the court. The court shall advise the defendant at or before the time the State's Attorney makes a recommendation that the court is not bound by the recommendation, that it may impose the maximum penalties provided by law for the offense to which the defendant pleads guilty, and that imposition of a penalty more severe than the one recommended by the State's Attorney will not be grounds for withdrawal of the plea."

Accordingly, even if the state had recommended an eighteen-month sentence, the trial court could have sentenced Woods to twenty-five years. The state recommended a sentence of ten to fifteen years (ECF 5-3 at 4), but the trial court exceeded the state's recommendation. Based on the trial court's comments after sentencing, it appears that the trial court imposition of the maximum sentence was influenced by the nature of the victim's injuries depicted in photographs submitted by the state. (*Id.* at 38–39.)

Woods has failed to show that the postconviction court's dismissal of Ground One is contrary to or an unreasonable application of federal law. Ground One is dismissed for lack of merit.

**B.  Ground Two — Ineffective Assistance of Counsel**

In Ground Two, Woods contends that his trial counsel was ineffective for failing to adequately inform him of the terms of the plea offer and he detrimentally relied on defense counsel's misrepresentation of the plea offer when pleading guilty. (ECF No. 5-1 at 19, 25–36.) The postconviction court dismissed Ground Two, finding that the record did not substantiate his claim of deficient performance. (ECF 5-1 at 59–52.)

The Court will first address respondents' argument that Ground Two is procedurally defaulted. (ECF No. 5 at 33–37.) Respondents argue that Ground Two should be dismissed because Woods improperly presented the claim to the Appellate Court of Maryland as postconviction court and counsel error. The Court disagrees. Woods used a pro se form to submit his Application for Leave to Appeal. (ECF No. 5-1 at 61–65.) The instructions on the form provide, "Explain in detail the issue(s) raised in the postconviction petition and give legal reasons why the post-conviction court was incorrect in denying the postconviction petition . . . " (*Id.* at 62.) Woods proceeded to explain the errors that he thought the postconviction court and his postconviction counsel committed that led to the denial of his petition. (*Id.* at 62–65.) The Court does not consider Woods' Application for Leave as an assertion of new claims on appeal, but rather as compliance with the directions to explain why leave should be granted.[3] Accordingly,

---

[3]     Respondents have briefed reasons why the Court should dismiss Woods' claim for ineffective assistance of postconviction counsel. As discussed, the Court does not consider this to be a claim that Woods has asserted in his state court proceedings or in his federal habeas petition. In any event, ineffective assistance of postconviction counsel is not a claim upon which federal habeas relief can be granted. *See* 28 U.S.C. § 2254(i).

Woods properly appealed Ground Two to the Appellate Court of Maryland and the Court will address Ground Two on the merits.

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. 100.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. 100. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. 100. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to postconviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of plea proceedings, the performance standard remains the same, but the prejudice prong of the test was enunciated by the Supreme Court as, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). The Court emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky,* 559 U.S. 356 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The postconviction court's dismissal of Ground Two was not an unreasonable application of *Strickland*. Woods cannot show that his counsel's performance was deficient under the circumstances. Noted above, Woods was advised no fewer than four times on the record that the state's offer to recommend an eighteen-month sentence was no longer available after he rejected the plea agreement on July 30, 2019. (ECF 5-2 at 8; ECF 5-3 at 4, 8–9.) He was advised that the sentence was within the discretion of the trial court and could be up to twenty-five years. (ECF 5-3 at 7.) Woods' assertions that his plea was due to his counsel's misrepresentation is not supported by any evidence and is contradicted by the transcripts in the record.

Woods has failed to show that his attorney was deficient or that any deficient performance caused him to plead guilty. As discussed in Ground One, the record reflects that Woods was fully informed of the choices available to him, the terms of the plea, and the possible sentence he could receive by pleading guilty in lieu of proceeding to trial. The record does not support Woods' claim that he detrimentally relied on any misrepresentation by his counsel when pleading guilty. The postconviction court's dismissal of Ground Two was neither contrary to nor an unreasonable application of federal law.

17

**C. Ground Three — Judicial Misconduct**

In Ground Three, Woods contends that the trial court engaged in judicial misconduct by presiding over his plea hearing and renegotiating the terms of the of the plea in violation of Md. Rule 4-243(c)(5) and (d):

> (5) *Withdrawal of Plea.* If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

> (d) Record of Proceedings. All proceedings pursuant to this Rule, including the defendant's pleading, advice by the court, and inquiry into the voluntariness of the plea or a plea agreement shall be on the record. If the parties stipulate to the court that disclosure of the plea agreement or any of its terms would cause a substantial risk to any person of physical harm, intimidation, bribery, economic reprisal, or unnecessary annoyance or embarrassment, the court may order that the record be sealed subject to terms it deems appropriate.

Md. Rule 4-243. As asserted by respondents (ECF No. 5 at 59), the Court finds that Ground Three is non-cognizable in federal habeas review. Woods contends that the trial court violated a specific provision of Maryland law, which cannot form the basis of federal habeas relief. *See Estelle*, 502 U.S. at 67–68.

To the extent that Ground Three could be interpreted as a federal constitutional claim, it fails on the merits. Due process guarantees a criminal defendant's right to an impartial trial judge. *In re Murchison*, 349 U.S. 133, 136 (1955). To support his claim of judicial misconduct, Woods points to two lines in the plea hearing transcript where the trial court restated the terms of the plea agreement. (ECF No. 5-4 at 4.) The statement is one expected from a judge presiding over a plea hearing and does not suggest that the trial court played any role in negotiating the terms of the plea or was biased in any way. The postconviction court's conclusion, "nothing . . . indicates that Judge

18

Dwyer improperly influenced or otherwise renegotiated the terms of the plea agreement," is not unreasonable. (ECF No. 5-1 at 60.)

Ground Three is dismissed as a non-cognizable state-law claim. To the extent it could be construed as a federal constitutional claim, it is dismissed for lack of merit.

### D. Ground Four — Due Process Violation

In Ground Four, Woods contends that his due process rights were violated because a motion to suppress hearing was held in his absence.[4] (ECF No. 5-1 at 19; ECF No. 5-4 at 8.) Woods' trial counsel filed a written motion to suppress on April 11, 2019. (ECF No. 5-1 at 16–17.) On June 10, 2019, the trial court held a hearing outside of Woods' presence. (*Id.* at 12.) At this hearing, Woods' counsel withdrew all pending motions, including the motion to suppress. (*Id.*) Woods argues that a suppression hearing was held without him, which is belied by the record. Accordingly, Woods cannot substantiate the factual basis of Ground Four.[5]

In any event, by entering his knowing, voluntary and counseled guilty plea, Woods waived all antecedent, non-jurisdictional claims. The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only

---

[4]     Respondents dedicate a section of their brief to discussing the appropriate standard of review given the postconviction court's failure to address Ground Four in its opinion. (ECF No. 5 at 62–72.) The Court has omitted a discussion of this issue because the claim lacks merit on both a *de novo* or deferential review.

[5]     The June 10, 2019, hearing also cannot be considered a violation of Woods' right to be present. "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The June 10, 2019, hearing does not meet this standard.

> attack the voluntary and intelligent character of the guilty plea by
> showing that the advice he received from counsel was [deficient].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (citation modified). When Woods entered his

guilty plea on August 1, 2019, he waived any claim that his right to be present at a pre-plea hearing

was violated.

Ground Four is unsupported by the record and was waived by Woods' guilty plea. As such,

Ground Four is without merit and is dismissed.

## IV.    Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first

receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate

of appealability "only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must

show that "reasonable jurists could debate whether . . . the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed

further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some

jurists would grant the petition for habeas corpus." *Id.* at 338. When a petition is denied on

procedural grounds, the petitioner may meet the standard by showing that reasonable jurists

"would find it debatable whether the petition states a valid claim of the denial of a constitutional

right" and "whether the district court was correct in its procedural ruling." *Id.*

Woods' claims have been dismissed on both substantive and procedural grounds. Upon

review of the record, this Court finds that Woods has not made the requisite showing. The Court

therefore declines to issue a Certificate of Appealability. Woods may still request that the United

States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d

528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

Dated this __31__ day of __July__, 2025.

FOR THE COURT:

James K. Bredar
United States District Judge